# In the District Court of the United States
## For the District of South Carolina
### BEAUFORT DIVISION

| | |
|---|---|
| Willie Nabritt, #269221, ) | |
| ) | Civil Action No. 9:05-2926-HFF-GCK |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Warden Willie Eagleton; and ) | **OF THE MAGISTRATE JUDGE** |
| Henry McMaster, Attorney ) | |
| General of South Carolina, ) | |
| ) | |
| Respondents. ) | |

## I. INTRODUCTION

The Petitioner, Willie Nabritt ("Petitioner" or "Nabritt"), a state prisoner proceeding without the assistance of counsel, seeks *habeas corpus* relief under Title 28, United States Code, Section 2254. By definition, the relief which he seeks must be based upon a finding that he is being illegally detained in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c)(3). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c), D.S.C., this United States Magistrate Judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## II. *PRO SE* PETITION

Nabritt is presently incarcerated in the Evans Correctional Institution ("ECI") of the South Carolina Department of Corrections ("SCDC"). Nabritt filed this Petition for a writ of *habeas corpus* (the "Petition") on October 12, 2005 against Warden Willie Eagleton and Henry McMaster, the Attorney General of the State of South Carolina.[1] [1-1]. Nabritt is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519

---

[1] Nabritt has the benefit of the holding in Houston v. Lack, 487 U.S. 266 (1988) with respect to the "delivery" date of October 12, 2005.

(1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214, codified at 28 U.S.C. § 2254. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

### III. PROCEDURAL HISTORY IN STATE COURT

#### A. Proceedings in the Court of General Sessions

During the July, 1997 term of the Court of General Sessions for Lexington County, the grand jury returned indictments against Petitioner for murder, and trafficking in crack cocaine, second offense. He was represented by Hervery Young, Esquire. On September 11, 2000, Nabritt appeared before the Honorable Marc H. Westbrook and pled guilty to the trafficking in

crack cocaine, second offense.[2] Judge Westbrook sentenced him to confinement in prison for a term of twenty (20) years, with credit for three and one-half years served. ([7-2] at pp. 4-14).

Petitioner timely filed a Notice of Intent to Appeal, and an appeal was perfected on his behalf by Daniel T. Stacey, Esquire, of the South Carolina Office of Appellate Defense. On May 25, 2001, Mr. Stacey submitted a Petition to be Relieved as Counsel as well as a Final *Anders* Brief of Appellant[3] to the South Carolina Court of Appeals. ([7-2] at pp. 15-24). One issue was presented for review:

> Whether the court erred when it failed to obtain on the record waivers of the right to confront witnesses and the right to remain silent before accepting appellant's plea?

On January 22, 2002, the Court of Appeals issued a per curiam opinion dismissing Petitioner's appeal pursuant to Anders and granting counsel's petition to be relieved.. State v. Nabritt, Unpublished Op. No. 02-UP-35. ([7-2] at pp. 25-26).

## B. Nabritt's Application for Post-Conviction Relief

The Petitioner timely filed an application for post-conviction relief ("PCR") on May 13, 2002 (02-CP-32-1679) and requested a new trial. ([7-2] at pp. 27-31). Petitioner raised the following grounds for relief:

1. Ineffective Assistance of Counsel.

    A.. For failing to move to suppress evidence in violation of the fourth Amendment.

    B. Trial counsel did not investigate all the charges pending against applicant.

    C. Trial counsel did not adequately ascertain the applicant's version of the facts of the case.

    D. Trial Counsel did not investigate all possible defenses in the case.

    E. Trail counsel did not discuss with the applicant the nature extent [sic] of the evidence which the state had against him.

    F. Trial counsel did not provide the applicant with an assessment of the states case.



---

[2] At the plea, the solicitor informed the court that "based on what happens here today that the murder case'll probably be dismissed and this case will end."

[3] See Anders v. California, 387 U.S. 738 (1967).

      G.    Trial Counsel did not work diligently to come to a reasonable plea agreement.

  II.    Involuntary Guilty Plea

The State made its Return on February 20, 2003. ([7-2] at pp. 29-33). An evidentiary hearing was held on the matter on November 13, 2003, before the Honorable William P. Keesley. The Petitioner testified on his own behalf. The State called Petitioner's trial counsel, Hervery Young and Rick Hubbard, Esquire to testify. ([7-2] at pp. 37-73 *and* [7-3] at pp. 1-30). On January 30, 2003, Judge Keesley filed an Order of Dismissal which denied and dismissed the PCR Application with prejudice. ([7-3] at pp. 31-38).

Petitioner timely served and filed a notice of appeal to the South Carolina Court of Appeals. On certiorari, Petitioner was represented by Assistant Appellate Defender Robert M Pachak. On July 12, 2004, Mr. Pachak, submitted a *Johnson* Petition for Writ of Certiorari and a Petition to be relieved of counsel with the South Carolina Supreme Court. The Petition raised the following issue:

    **1.**    **Whether petitioner's guilty plea complied with the mandates set forth in Boykin v. Alabama?**

On July 22, 2004, Petitioner filed a *pro se* petition for certiorari. ([7-4] at pp. 1-7). On August 16, 2005, the South Carolina Supreme Court issued an Order denying the petition for certiorari and granting counsel's request to withdraw. The Remittitur was issued on September 6, 2005. ([7-4] at p. 24; 23).



### IV. FEDERAL COURT HISTORY

### A. Nabritt's Petition for a Writ of Habeas Corpus

On October 14, 2005, Nabritt filed his Petition for a writ of habeas corpus. [1-1] The Petition set forth three (3) grounds for relief:

    1.    Petitioners guilty plea violated due process as protected by the 14th Amendment of the U. S. Constitution, because not intelligently knowingly and voluntarily entered.

          Before accepting the guilty plea, court failed to obtain waiver of the right to confront witnesses and right to remain silent."

2. Ineffective Assistance of Counsel in violation of the six amendment and Fourteenth Amendment of the U. S. Constitution.

Counsel ineffective for failing to move to suppress evidence, in violation of fourth amendment; not investigating all charges pending against applicant; did not adequately ascertain applicant's version of facts of case, not investigating all possible defenses, did not discuss with applicant the nature and extent of evidence against him."

3. Ineffective Assistance of Counsel in violation of the Sixth Amendment of the U. S. Constitution.

Counsel failed to advise Petitioner about his sentences['] mandatory community supervision (CS) requirement, with the included waiver of a jury trial for violation sentences of up to one year, and that a supervision term could last up to 20 years if repeated violations occur. If advised Petitioner would have not plead guilty and insisted on going to trial.

On October 19, 2005, the undersigned issued an Order which authorized service on Warden Willie Eagleton and Henry McMaster (collectively, the "Respondents"), and notified Nabritt of the change of address rule. [4-1] The Respondents were served with the Petition on October 19, 2005. [5-1] Thereafter, in response to Nabritt's Petition for *habeas corpus* relief, the Respondents timely filed a Motion for Summary Judgment and a Return and Memorandum of Law in Support of Motion for Summary Judgment (the "Motion for Summary Judgment") on December 8, 2005. [6-1; 7-1]

The undersigned issued an Order on December 13, 2005, under Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Nabritt of the summary judgment dismissal procedure and the possible consequences if he failed to respond adequately to the Motion for Summary Judgment.[4] [9-1] On December 27, 2005, Nabritt filed a motion to extend time to reply, which was granted on January 4, 2006. [10-1; 11-1] On January 17, 2006, Nabritt filed his Reply and Memorandum of Law in Opposition to the Motion for Summary Judgment. [12-1]

---

[4] The explanation to the *pro se* litigant is required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), which was a civil rights case. The same procedure has been held to apply in federal habeas corpus cases under Webb v. Garrison, No. 77-1855 (4th Cir., decided July 6, 1977).

## B. The Standard for Determining a Motion for Summary Judgment

The standard of review for determining a motion for summary judgment was articulated in the recent case of *Al-Marri v. Hanft*, 378 F.Supp. 2d 673, 675-76 (D.S.C. 2005). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), *citing United States v. Diebold, Inc.*, 369 U.S. 654 (1962).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-23. Hence, the granting of summary judgment involves a three-tier analysis. First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies

the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed.R.Civ.P. 56(e).

### C. Habeas Corpus Review

#### 1. Application of the Antiterrorism and Effective Death Penalty Act

The delivery date of the Petition is October 12, 2005. Accordingly, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") apply to this case. *Lindh v. Murphy*, 521 U.S. 320 (1997).

#### 2. Exhaustion of State Court Remedies

Relief under Section 2254 may be had only after a habeas petitioner has exhausted his state court remedies: "It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas. Claims not so raised are considered defaulted." *Breard v. Green*, 523 U.S. 371, 375 (1998), citing *Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also* 28 U.S.C. § 2254(b). This Court's exhaustion requirements under Section 2254 are fully set forth in *Matthews v. Evatt*, 105 F.3d 907 (4th Cir.), *cert. denied*, 522 U.S. 833 (1997):

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a § 2254 petitioner is required to "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts[.]
>
> To satisfy the exhaustion requirement, a habeas petition must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced[.] [5]

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10–160 (the "Act"). The applicant may allege constitutional violations in a PCR

---

[5] Matthews v. Evatt, 105 F.3d at 910-11 (citations omitted).

proceeding, but only if the issue could not have been raised by direct appeal. *Gibson v. State*, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), *citing* S.C. Code Ann. §§ 17-27-20(a)(1), (b). "Exhaustion includes filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." *Gibson v. State*, 329 S.C. at 42, 495 S.E.2d at 428. As the South Carolina Supreme Court has explained: "[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies. *In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 564, 471 S.E.2d 454, 454 (1990).

Just as the exhaustion doctrine requires that a claim be fairly presented to all appropriate state courts before it is raised in a Section 2254 petition, if a claim has not been presented but no state remedy remains available, the claim will be considered procedurally defaulted. *Teague v. Lane*, 489 U.S. 288 (1989). A claim that has been procedurally defaulted in state court usually will not be reviewed in a Section 2254 petition. A federal court will hear a procedurally defaulted claim only if the petitioner "'can demonstrate <u>cause</u> for the default <u>and actual prejudice</u> as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice.'" *Matthews v. Evatt*, 105 F.3d at 916, *quoting Coleman v. Thompson*, 501 U.S. at 750 (emphasis supplied by the undersigned). Unless a petitioner can demonstrate both "cause" and "prejudice", this Court will be procedurally barred from considering those claims that are procedurally defaulted. *Daniels v. Lee*, 316 F.3d 477, 486 (4th Cir. 2003).

Respondents concede that Petitioner generally has exhausted his state remedies with the denial of his direct appeal, and Petition for Writ of Certiorari to the South Carolina Supreme Court on the state trial court's disposition of his claims for relief in the PCR. *See generally*, S.C. Code Ann. § 17-27-100 (1985); *Drayton v. Evatt*, 312 S.C. 4, 430 S.E.2d 517 (1993); Rule 203,

SCACR. Accordingly, this Petition is not subject to dismissal in order to continue the pursuit of available state remedies, as there are none.

### 3. Scope of Review

It is well settled that a defendant who pleads guilty upon the advice of counsel can only attack the voluntary or intelligent character of his plea by showing ineffective assistance of counsel. *Richardson v. State*, 310 S.C. 360, 426 S.E.2d 795 (1993), *citing Hill v. Lockhart*, 474 U.S. 52 (1985). The U.S. Supreme Court has set forth a two-part test to determine whether a convicted defendant is entitled to relief based upon ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must first show that counsel's performance fell below an objective standard of reasonableness. Id. In making this determination:

> [A] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound strategy.' . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. *Id.* at 689.

Thus, the reviewing court must be deferential to counsel and not second-guess counsel's acts or omissions after an adverse result, which may easily lend itself to a finding that counsel's assistance was unreasonable based upon the fact of the adverse result. *Id.*



Even if a defendant can show deficient performance by his trial attorney, he must also prove that he was prejudiced by counsel's performance. To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is probability sufficient to undermine confidence in the outcome." *Id.* It is insufficient to show only that the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test. *Id.* at 693. The defendant bears a "'highly demanding' and 'heavy burden' in establishing actual prejudice." *(Terry) Williams v. Taylor*, 529 U.S. 362, 394 (2000). Thus, in the context of a guilty plea,

Petitioner must establish prejudice by proving that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*. The defendant must show that "there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial. *Id*.

This Court's review of collateral attacks on state criminal convictions is governed by the parameters set forth in the AEDPA, which amended Section 2254. Under the AEDPA, a federal court may only grant habeas corpus relief under Section 2254(d) with respect to a claim adjudicated on its merits in a state court proceeding if that state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2003), *quoting* 28 U.S.C. § 2254(d) *and citing (Terry) Williams v. Taylor*, 529 U.S. 362, 402-413 (2000) (discussing 2254(d)).



With respect to the first prong of the analysis, the United States Supreme Court has explained that a state court adjudication is "contrary to" clearly established Federal law only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). An "unreasonable application" of Federal law will be found "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 529 U.S. at 412-413. An "unreasonable application" likewise will be found if the state court "was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled. *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000) (opinion of Kennedy, J.). Yet as *Williams* teaches, a state court's "unreasonable application" of the law informs the federal court

to the extent that the latter "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Bates v. Lee*, 308 F.3d 411, 417 (4th Cir. 2002), *cert. denied*, 538 U.S. 1061 (2003), *quoting Williams*, 529 U.S. at 411. The Fourth Circuit has held that this application of federal law must be "objectively unreasonable." *Oken v. Corcoran*, 220 F.3d 259, 264 (4th Cir. 2000) (noting that the Supreme Court in *Williams* "adopted" the holding in *Green v. French*, 143 F.3d 865, 870 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999) that the "unreasonable application" inquiry is an objective inquiry.).

Turning to Section 2254(d)(2), the proper analysis for establishing whether there exists an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding" is framed by Section 2254(e)(1), which provides that the findings of fact by a state court are entitled to a "presumption of correctness" and the petitioner must bear the burden of rebutting that presumption by "clear and convincing evidence." See 28 U.S.C. § 2254(e)(1). The federal courts must accord "considerable deference in their review of state habeas proceedings." *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005), *citing (Terry) Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Thus, even if an error were identified in the record, "the habeas petitioner will be entitled to relief only if the habeas court is 'in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.'" *Jones v. Polk*, 401 F.3d 257, 265 (4th Cir. 2005), *quoting O'Neal v. McAninch*, 513 U.S. 432, 436 (1995) (internal quotation marks and citation omitted). As *Jones* explains, "[t]he proper inquiry is not 'merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Jones*, 401 F.3d at 265, *quoting Kotteakos v. United States*, 328 U.S. 750, 765 (1946).

When Congress crafted this deferential standard of review in the AEDPA, it was at least partially motivated "to limit federal intrusion into state criminal adjudications." *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000). As Judge Wilkinson observed in *Lovitt*, "[i]t is, after all, the job of state courts to faithfully apply federal law. U.S. Const., Art. VI, cl. 2. Their efforts in this regard are to be respected as the acts of sovereign entities, whose sworn allegiance to the Constitution and the laws of the United States is as solemn as our own." *Lovitt*, 403 F.3d at 178. Mindful of the deference this federal court owes to South Carolina courts, Petitioner's claims will be addressed in the order he presents them.

### D. Review of Nabritt's Habeas Allegations on the Merits

#### 1. Ground One

"Petitioners guilty plea violated due process as protected by the 14th Amendment of the U. S. Constitution, because not intelligently knowingly and voluntarily entered.

Before accepting the guilty plea, court failed to obtain waiver of the right to confront witnesses and right to remain silent."

When pleading guilty, a defendant must understand the charge and the consequences of the plea. The record should indicate a factual basis for the plea. Further, the court should explain to the defendant the waiver of his constitutional rights as well as possible sentencing possibilities. *See Gaines v. State*, 335 S.C. 376, 517 S.E.2d 439 (1999), *citing Boykin v. Alabama*, 395 U.S. 238 (1969).

"The Supreme Court has further held that 'while the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law, and not a question of fact subject to the requirements of [former § 2254(d), now § 2254(e)(1)],' the historical facts underlying such pleas are entitled to deference under the statute". *Sargent v. Waters*, 71 F.3d 158, 160 (4th Cir. 1995), *quoting Marshall v. Lonberger*, 459 U.S. 422, 421-32 (1983).

Here, the plea transcript in this case reflects that the judge engaged in a detailed colloquy with Petitioner. The judge advised Petitioner of the maximum penalties, and the constitutional

rights Petitioner was waiving by pleading guilty. Petitioner indicated he had discussed these matters with his attorney, was pleading guilty of his own free will, and admitted his guilt of the crime. ([7-2] at pp. 5-6).

This is sufficient to satisfy *Boykin*. Petitioner has failed to show that he meets the test for relief. *See Hill v. Lockhart*, 474 U.S. 52 (1985) ("A defendant who pleads guilty upon the advice of counsel can only attack the voluntary or intelligent character of his plea by showing ineffective assistance of counsel.").

As the record reflects, Petitioner willingly pled guilty to the drug charges because of a negotiated plea wherein the state agreed not to pursue the murder charge for which he also was indicted. ([7-2] at pp. 63; 67-73; [7-3] at p. 12). Both the trial court and the PCR judge found Petitioner's plea was knowingly and voluntarily given, and these decisions are well-supported by the transcript of the plea proceedings and by counsel's testimony at the PCR hearing. ([7-2] at pp. 67-73).

## 2. Ground Two

Ineffective Assistance of Counsel in violation of the six[th] amendment and Fourteenth Amendment of the U. S. Constitution.

Counsel ineffective for failing to move to suppress evidence, in violation of fourth amendment; not investigating all charges pending against applicant; did not adequately ascertain applicants version of facts of case, not investigating all possible defenses, did not discuss with applicant the nature and extent of evidence against him."



In Petitioner's second ground for relief, he contends he received ineffective assistance of counsel, in that his counsel allegedly failed to investigate his case, and did not adequately advise Petitioner of the evidence against him.

The PCR court specifically found that Nabritt's testimony regarding counsel's conduct was not credible and that Nabritt failed to prove his allegations of ineffective assistance of counsel under the *Strickland* standard. The PCR court stated that counsel conducted a diligent and thorough investigation of the facts of the drug trafficking and murder charges and was aware of the evidence the State planned to present, and provided Nabritt with an assessment of the

strength of the State's case on both charges. In addition, counsel entered into plea discussions with the solicitor and obtained a favorable plea for Nabritt. ([7-3] at pp. 33-35).

During the factual recitation at the plea hearing, the solicitor noted facts which necessarily referred to the murder charge. The solicitor also mentioned that the victim's family was at the plea hearing. Petitioner testified that counsel's failure to object to the comments prejudiced him. ([7-2] at pp. 45-48). However, the PCR court found that these comments did not play a role in Petitioner's sentence. Petitioner's testimony at his PCR hearing appears to overlook the fact that he entered a negotiated plea wherein the murder charge was dropped, and, according to counsel, received the expected sentence. Trial counsel testified he discussed the facts of the case with Petitioner, informed Petitioner of the ongoing plea negotiations, and reviewed the State's evidence with Petitioner. ([7-2] at pp. 59-69). In addition, counsel testified that Petitioner "from day one told me that he was willing to enter a plea to the trafficking charge straight up if the murder charge went away." ([7-2] at 72-73). The record also indicates that counsel made Nabritt aware of his defenses and the status of plea negotiations; and was well aware of the factual issues regarding both charges and in preparation for trial, counsel filed numerous motions, and overall represented Petitioner diligently. Accordingly, counsel was not deficient in his investigation and preparation.



Moreover, Nabritt cannot establish prejudice. Nabritt ultimately decided to plead guilty after his attorney negotiated a favorable plea deal in which the murder charges were *nolle prossed*. Nabritt simply cannot establish a reasonable probability he would have insisted upon a trial, despite his self-serving and after-the-fact protestations to the contrary before this court. The record reflects that Nabritt's guilty plea was voluntary and intelligent. It must be remembered that the guilty plea was a negotiated plea and the murder charge was dropped in return for the guilty plea. The state trial court conducted an extensive colloquy with Nabritt to ensure that his guilty plea was made knowingly and intelligently. Thus, Nabritt is bound by the representations he made during the plea colloquy. *Burket v. Angelone*, 208 F.3d 172, 191 (4th

Cir. 2000) *citing Fields v. Attorney General of State of Maryland*, 956 F.2d 1290, 1299 (4th Cir.1992).

In summary, there is more than ample evidence in the record to sustain the PCR court's decision to reject Petitioner's claims. As noted above, the PCR court found Petitioner's testimony not to be credible on all aspects of the representation, and trial counsel's testimony to be credible. The PCR court's determination of credibility is supported by the record and afforded a presumption of correctness. *See Howard v. Moore*, 131 F.3d 399, 422 (4th Cir. 1997) (*en banc*) ("The state PCR court's factual findings are entitled to a presumption of correctness.") (citation omitted); *see also Wilson v. Ozmint*, 352 F.3d 847 (4th Cir. 2004) (credibility determinations are factual determinations subject to the presumption of correctness).

### 3. Ground Three

Ineffective Assistance of Counsel in violation of the Sixth Amendment of the U. S. Constitution.

> Counsel failed to advise Petitioner about his sentences mandatory community supervision (CS) requirement, with the included waiver of a jury trial for violation sentences of up to one year, and that a supervision term could last up to 20 years if repeated violations occur. If advised Petitioner would have not plead guilty and insisted on going to trial.

Nabritt's final ground for relief is based upon is claim that he was not advised about the community supervision provision applicable to "no parole offenses" pursuant to S.C. Code Ann. § 24-21-560 (Supp. 2001).

As a threshold matter, the issue is procedurally barred from review in this federal habeas corpus proceeding. Nabritt did not assert this issue at the PCR hearing or before the South Carolina Supreme Court on appeal. Thus, the issue never was addressed by the PCR trial court's order and was never presented to the state's highest court. Therefore, it cannot be raised in state court again, and is technically exhausted but procedurally barred from review in this action. *See, e.g., Coleman v. Thompson,* 501 U.S. 722 (1991) (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas).

In any event, the issue is without merit. As noted before, Petitioner is evidently referring to the community supervision provision applicable to "no parole offenses" pursuant to S.C. Code Ann. § 24-21-560 (Supp. 2001). This provision is applicable to all offenders convicted of "no parole" crimes, and requires them to complete a two-year program after they are released before they are completely discharged from the criminal justice system. Failure to successfully complete the program can result in additional incarceration. *See generally State v. Scott*, 351 S.C. 584, 571 S.E.2d 700, 703 (2002).

The community supervision provision is clearly a collateral circumstance of Petitioner's sentence. Normally, parole eligibility is a collateral consequence of sentencing; consequently, a defendant need not be specifically advised of it before entering a guilty plea. *Bell v. North Carolina*, 576 F.2d 564 (4th Cir.1978). Likewise, the state supreme court has expressly ruled that community supervision is a collateral circumstance, noting that the program "serves essentially the same function for persons convicted of 'no parole offenses' as parole does for other inmates[.]" *Jackson v. State*, 562 S.E.2d 475 (2002). *Jackson* specifically held that trial counsel was not required to advise a defendant about community supervision in order to render effective assistance of counsel in a guilty plea setting. *Id.*

In *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979), the Fourth Circuit applied a strict test in order for relief to be granted with regard to collateral circumstances. *Strader*, 611 F.2d at 65 ("Here, though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel. When the erroneous advice induces the plea, permitting him to start over again is the imperative remedy for the constitutional deprivation.").

In the present case, Nabritt has not met his burden of showing ineffective assistance from an alleged lack of advice about community supervision. There is absolutely no testimony in the record that Nabritt inquired about community supervision, or that counsel gave him <u>any</u> advice

about community supervision, much less misadvised him about the subject. It is plainly evident that the plea was induced by Petitioner's desire to accept a deal that precluded a murder charge. Nabritt has not met the *Strader* test and this issue is without merit.

### RECOMMENDATION

For the foregoing reasons, it is recommended that the Respondents' Motion for Summary Judgment **[6-1] should be granted** and that Petitioner's Petition [1-1] should be denied and dismissed.

George C. Kosko
United States Magistrate Judge

March 29, 2006

Charleston, South Carolina

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \* \* \* This duplication of time and effort wastes judicial**

> resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
